IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRIS ROBINSON,<br><br>           Plaintiff,<br><br>     v.<br><br>HD SUPPLY, INC.,<br><br>           Defendant.<br>_____ | 2:12-cv-00604-GEB-CKD<br><br><u>ORDER GRANTING IN PART AND</u><br><u>DENYING IN PART DEFENDANT'S</u><br><u>DISMISSAL MOTION</u> |

Defendant HD Supply, Inc. ("HD Supply") moves under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for dismissal of Plaintiff's complaint. Plaintiff Kris Robinson ("Robinson") filed an opposition brief.

**I. LEGAL STANDARD**

Decision on HD Supply's Rule 12(b)(6) dismissal motion requires determination of "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." <u>Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.</u>, 637 F.3d 1047, 1054 (9th Cir. 2011) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556

1 U.S. at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556
2 (2007)).

3   When determining the sufficiency of a claim, "[w]e accept
4 factual allegations in the complaint as true and construe the pleadings
5 in the light most favorable to the non-moving party[; however, this
6 tenet does not apply to] . . . legal conclusions . . . cast in the form
7 of factual allegations." <u>Fayer v. Vaughn</u>, 649 F.3d 1061, 1064 (9th Cir.
8 2011) (citation and internal quotation marks omitted). "Therefore,
9 conclusory allegations of law and unwarranted inferences are
10 insufficient to defeat a motion to dismiss." <u>Id.</u> (citation and internal
11 quotation marks omitted); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 678 (quoting
12 <u>Twombly</u>, 550 U.S. at 555) (stating "[a] pleading that offers 'labels and
13 conclusions' or 'a formulaic recitation of the elements of a cause of
14 action will not do'").

## II. REQUEST FOR JUDICIAL NOTICE

16   HD Supply requests that judicial notice be taken of the
17 administrative complaint Robinson filed with the California Department
18 of Fair Employment and Housing ("DFEH"). (Def.'s Request for Judicial
19 Notice ("RJN") Ex. A.) However, "a court may consider a writing
20 referenced in a complaint but not explicitly incorporated therein if the
21 complaint relies on the document and its authenticity is unquestioned."
22 <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007). Since Robinson
23 alleges in his civil complaint that he exhausted administrative remedies
24 applicable to his California Fair Employment and Housing Act ("FEHA")
25 claims and does not dispute the authenticity of the document of which HD
26 Supply seeks judicial notice, this document is considered under the
27 incorporation by reference principle.
28 //

1       HD Supply also requests that judicial notice be taken of
2  "[t]he driving distance between the city centers of Sacramento and
3  Salinas, California, and the time[] it would take to drive that
4  distance." (Def.'s RJN 2:8-9.) However, in light of the issues decided
5  in this motion, this request is denied because these facts have no
6  bearing on the decision. See Ventura Mobilehome Communities Owners Ass'n
7  v. City of San Buenaventura, 371 F.3d 1046, 1052 n.5 (9th Cir. 2004)
8  (denying judicial notice request where the facts "d[id] not alter . . .
9  determination of the case").

## III. ROBINSON'S ALLEGATIONS

This case concerns Robinson's termination from employment with HD Supply. Robinson alleges he was employed as an Assistant Transportation Manager with HD Supply from March 2008 to February 2010, and that "his job duties included . . . scheduling truck drivers and coordinating pick-ups and deliveries throughout Northern California." (Pl.'s Compl. ("Compl.") ¶¶ 7-8.)

Robinson alleges that "[o]n or about January 11, 2010, [he] informed Mary Sullivan [('Sullivan')], [HD Supply's] Distribution Center Manager and [his] immediate supervisor, that he had recently been diagnosed with Post Traumatic Stress Disorder ('PTSD') as a result of events that occurred during his overseas service in the United States Marine Corps." Id. ¶ 10. Robinson alleges that "on or about January 20, 2010, [Sullivan] instructed [him] to locate a driver who would be able to make a delivery from Sacramento to Salinas on short notice." Id. ¶ 12. "[Robinson] was concerned about this instruction . . . because he knew that, based on the distance between these locations, this delivery route would necessitate a violation of the U.S. Department of Transportation Hours-of-Service Regulations[,] . . . [which] require,

*inter alia*, that employers . . . only permit their drivers to drive for a maximum of 11 hours after 10 consecutive hours off duty." Id.

Robinson alleges he "shared his concern with [Sullivan], who refused to rescind her order." Id. ¶ 13. "Thereafter, [Robinson] consulted with [HD Supply's] Regional Transportation Manager, Bruce Gagon [('Gagon')], and informed him of the situation." Id. "When making this complaint, [Robinson] also suggested an alternative method of accomplishing the delivery without violating any Department of Transportation Regulations." Id.

Robinson alleges "[Gagon] advised [him] that if he was uncomfortable with the instruction, he should ask [Sullivan] to issue the order herself." Id. ¶ 14. Robinson further alleges he "complied with this direction from [Gagon] and refused to issue the non-compliant order." Id. Robinson alleges "[Sullivan] . . . told [him] that he would be disciplined for insubordination if he maintained his refusal to execute the order." Id. ¶ 15. Robinson alleges "[Sullivan's] . . . threat to discipline [him] unless he participated in a practice that he knew violated Federal law caused [him] extreme stress and anxiety[,] . . . [which] exacerbated [his] pre-existing PTSD[.]" Id. ¶ 16. Robinson alleges that "[i]n an attempt to defuse the volatile situation [Sullivan] created, [Robinson] decided to take a walk in the warehouse in order to calm down." Id. ¶ 17. Robinson alleges that "[b]ased on [this] incident, [he] was suspended indefinitely." Id. ¶ 18.

Robinson alleges that "[b]ecause of the stress the suspension caused him, [he] visited his physician's office and received a note from [a] Nurse Practitioner . . . prescribing he take a 10-working-day leave of absence." Id. ¶ 19. Robinson alleges that "[i]mmediately upon his return [to work on February 9, 2010], [Sullivan] continued to discipline

4

[him] for his alleged pre-suspension insubordination." Id. ¶ 21. Robinson alleges "[HD Supply] summarily terminated [his] employment the next day, February 10, 2010[.]" Id. ¶ 22.

Robinson alleges that "[o]n or about March 22, 2010, [he] duly presented a discrimination and harassment Complaint against [HD Supply] to the [DFEH] . . . in compliance with the requirements of [FEHA.]" Id. ¶ 6. Robinson alleges the following in the administrative complaint he submitted to the DFEH:

> I believe I was suspended and my employment was terminated because of my disability (post traumatic stress disorder). My belief is based on the following:
>
> A. On approximately January 11, 2010, I informed Mary Sullivan . . . that I was diagnosed with [PTSD].
>
> B. On January 20, 2010, I was informed by Mary Sullivan . . . that I was being suspended. Other managers have committed infractions and were not suspended. Therefore, I believe I was suspended because of my disability[.]
>
> C. On January 25, 2010, I was placed off work by my physician.
>
> D. On February 9, 2010, I returned to work.
>
> E. On February 10, 2010, I was informed by Mary Sullivan . . . that my employment was being terminated for insubordination. Other managers have committed infraction[s] and have not been terminated. Therefore, I believe I was terminated because of my disability[.]

(Def.'s RJN Ex. A.) Robinson alleges "DFEH issue[d] a Right-to-Sue Notice . . . on January 25, 2011[,]" which Robinson attached to his civil complaint. (Compl. ¶ 6 & Ex. A.)

Robinson alleges in his civil complaint that HD Supply violated FEHA by discriminating against him because of his disability; failing to provide a reasonable accommodation; failing to engage in the

5

interactive process; and failing to prevent discrimination. (Compl. ¶¶ 38, 40, 48-57 & 74-75.) Robinson also alleges HD Supply violated California Labor Code sections 1102.5 and 98.6 by terminating his employment in retaliation for his refusal to follow Sullivan's order, which Robinson alleges would have required him to violate federal law. Id. ¶ 66. Robinson further alleges HD Supply's termination of his employment violated California public policy against disability discrimination and retaliation. Id. ¶¶ 27-31. Robinson also alleges a claim for negligent hiring and retention. Id. ¶¶ 81-82.

## IV. DISCUSSION

**A. Failure to Exhaust Administrative Remedies**

HD Supply argues the following claims should be dismissed since "[Robinson] failed to exhaust his administrative remedies" applicable to these claims: retaliation under Labor Code sections 1102.5 and 98.6; and FEHA claims for failure to provide him with a reasonable accommodation and an interactive process, and to prevent discrimination to which he was subjected. (Def.'s Mot. to Dismiss ("Mot.") 11:19-21.) "[T]he rule [of exhaustion of administrative remedies] is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." Campbell v. Regents of Univ. of Cal., 35 Cal. 4th 311, 321 (2005) (internal quotation marks and citation omitted). HD Supply argues:

> [Robinson's] administrative complaint is based upon a claim that his employment was terminated because of an alleged mental disability. The administrative complaint does not contain any claims or facts that an adverse action was taken against [him] for retaliatory purposes or that HD [Supply] failed to accommodate [him regarding his disability], failed to engage in the interactive process, or failed to prevent discriminatory acts.

(Mot. 11:14-19.)

6

1. **Retaliation Claim**

Robinson argues in his opposition brief:

> [The] Retaliation claim is based on violations of [Labor Code sections] 1102.5 and 98.6, and not the FEHA. Therefore, there is no FEHA-based exhaustion requirement for the Retaliation [claim]. For this reason, [Robinson] will not offer further opposition to [HD Supply's] 'failure to exhaust' argument [regarding] the Retaliation claim.

(Pl.'s Opp'n ("Opp'n") p.5 n.1.) HD Supply rejoins that "[s]ections 98.6 and 1102.5 of the Labor Code [r]equire an [e]xhaustion of [administrative r]emedies." (Def.'s Reply 1:24-2:18.)

Section 1102.5(c) proscribes "[a]n employer . . . [from] retaliat[ing] against an employee for refusing to participate in an activity that would result in a violation of state or federal statute," and "[r]emedies for [section] 1102.5 are specifically found in [section] 98.6(b)[.]" Manser v. Sierra Foothills Pub. Util. Dist., No. CV-F-08-1250, 2010 WL 2465418, at *2 (E.D. Cal. June 15, 2010). "[I]n order to bring a claim under section 1102.5 . . . , plaintiff must exhaust his administrative remedies." Lund v. Leprino Foods Co., No. CIV. S-06-0431, 2007 WL 1775474, at *4 (E.D. Cal. June 20, 2007) (citing Campbell, 35 Cal. 4th at 333). Since Robinson fails to allege he exhausted his administrative remedies applicable to his retaliation claim, this claim is dismissed.

2. **Failure to Provide a Reasonable Accommodation and Failure to Engage in the Interactive Process Claims**

Robinson argues he exhausted his administrative remedies applicable to his FEHA claims, because his allegations that HD Supply failed to provide him with a reasonable accommodation and an interactive process are "like or reasonably related" to the disability discrimination claims in his administrative complaint. (Opp'n 5:12-7:3.)

7

1        "In order to bring a civil action under FEHA, the aggrieved
2   person must exhaust the administrative remedies provided by law . . .
3   [by] filing a written charge with DFEH . . . and obtaining notice from
4   DFEH of the right to sue." <u>Rodriguez v. Airborne Express</u>, 265 F.3d 890,
5   896 (9th Cir. 2001) (internal quotation marks and citations omitted).

> The scope of the administrative [complaint] defines the scope of the subsequent civil action, and unlawful conduct not included in an administrative complaint is not considered by a court unless the conduct is like or reasonably related to the allegations in the administrative complaint, or can reasonably be expected to grow out of an administrative investigation.

<u>Lelaind v. City & Cnty. of San Francisco</u>, 576 F. Supp. 2d 1079, 1090 (N.D. Cal. 2008) (citations omitted). Further, where "additional claims [in the civil complaint] . . . stem from the [same conduct] identified in the [administrative] complaint, [the additional claims] would have been uncovered during the course of a DFEH investigation." <u>Ramirez v. Silgan Containers</u>, No. CIV F 07-0091, 2007 WL 1241829, at *5 (E.D. Cal. Apr. 26, 2007).

        Here, Robinson alleged in his administrative complaint that he informed Sullivan that he had been diagnosed with PTSD and that he was terminated because of this disability approximately one month later. (Def.'s RJN Ex. A.) Since Robinson's claims alleging failure to provide a reasonable accommodation and an interactive process stem from the same conduct alleged in Robinson's administrative complaint, these claims probably would have been uncovered during the course of a DFEH investigation. Therefore, these claims "are reasonably . . . related to the conduct identified in the administrative charge[,]" and HD Supply has not demonstrated that Robinson failed to exhaust his administrative

remedies applicable to these claims. <u>Ramirez</u>, 2007 WL 1241829, at *5 (citations omitted).

### 3. Failure to Prevent Discrimination Claim

HD Supply argues Robinson failed to exhaust his administrative remedies applicable to his failure to prevent discrimination FEHA claim. (Mot. 11:14-21.) Robinson does not address this argument in his opposition brief. Since Robinson did not allege in his administrative complaint that HD Supply failed to prevent discrimination, and since Robinson has not demonstrated that he has exhausted his administrative remedies applicable to this claim, this claim is dismissed.

## B. Disability Discrimination Claim

HD Supply argues, *inter alia*:

> [FEHA] does not prohibit an employer from discharging an employee that is unable to perform his . . . essential duties because of his . . . mental disability even with reasonable accommodation. In this regard, [Robinson] fails to allege 1) that his PTSD condition affected his ability to perform his essential duties of dispatching drivers[;] and 2) that his PTSD required an accommodation to perform those essential duties.

(Mot. 14:7-12.) Robinson counters that "[e]ven if this were true . . . , [it] would not be a valid ground upon which to base a motion to dismiss [a] claim for disability discrimination." (Opp'n p.8 n.2.)

"[A] prima facie case [of disability discrimination] requires the plaintiff to show he . . . (1) suffered from a disability . . . ; (2) could perform the essential duties of the job with or without reasonable accommodations[;] and (3) was subjected to an adverse employment action because of the disability[.]" <u>Wills v. Super. Ct. of Orange Cnty.</u>, 195 Cal. App. 4th 143, 159-60 (2011) (internal quotation marks and citations omitted). Here, Robinson does not allege facts

supporting drawing a reasonable inference that he "could perform the essential duties of [his] job with or without reasonable accommodation[]." Id. Therefore, his disability discrimination claim is dismissed.

**C. Failure to Provide a Reasonable Accommodation and Failure to Engage in the Interactive Process Claims**

HD Supply argues Robinson fails to state viable failure to provide a reasonable accommodation and failure to engage in the interactive process claims, since "[FEHA] requires that the employee initiate the [interactive] process . . . [and Robinson] does not allege that he sought out or initiated a request for a reasonable accommodation." (Mot. 16:16-19.) HD Supply also argues "[Robinson] does not allege that he informed Sullivan, Gagon, or HD [Supply] of [his] medical leave of absence." Id. at 7 n.8. Robinson counters that an employer's "duty [to accommodate a disabled employee] arises even if the employee has not requested any accommodation, so long as the employer is aware of the disability." (Opp'n 12:11-12.)

FEHA proscribes an employer from "fail[ing] to make reasonable accommodation for the known . . . mental disability of an . . . employee." Cal. Gov't Code § 12940(m). FEHA also imposes a duty on the employer "to engage in a timely, good faith, interactive process with the employee . . . [for the purpose of] determin[ing] effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known . . . mental disability." Id. § 12940(n). Therefore, "[t]he duties of employers under [sections] 12940(m) and 12940(n) are inextricably linked." Kelley v. Corrections Corp. of Am., 750 F. Supp. 2d 1132, 1140 (E.D. Cal. 2010) (citation omitted).

10

1    "The employee bears the burden of giving the employer notice
2 of his . . . disability. Although no particular form of request is
3 required, the duty of an employer reasonably to accommodate an
4 employee's handicap does not arise until the employer is aware of [the
5 employee's] disability and [related] limitations." Avila v. Cont'l
6 Airlines, Inc., 165 Cal. App. 4th 1237, 1252-53 (2008) (internal
7 quotation marks, citations, and alteration in original omitted).
8 Therefore, "[t]he interactive process is triggered either by a request
9 for accommodation by a disabled employee or by the employer's
10 recognition of the need for such an accommodation." Barnett v. U.S. Air,
11 Inc., 228 F.3d 1105, 1112 (9th Cir. 2000), *vacated in part on other
12 grounds*, U.S. Airways, Inc. v. Barnett, 535 U.S. 391 (2002).
13    Here, Robinson fails to allege facts supporting drawing a
14 reasonable inference that HD Supply was aware of a need to engage in the
15 interactive process and to accommodate Robinson's alleged mental
16 disability. Therefore, these claims are dismissed.

17 **D. Wrongful Termination in Violation of Public Policy Claims**

18    HD Supply argues Robinson's "wrongful termination [claims are]
19 based upon two alleged activities: 1) HD [Supply] terminated his
20 employment because of his mental disability; and 2) HD [Supply]
21 terminated his employment [in] retaliation." (Mot. 15:19-22.) HD Supply
22 argues that since Robinson "fail[s] to allege sufficient facts to
23 constitute a cause of action for either [underlying] claim," the
24 derivative wrongful termination claims should also be dismissed. Id.
25 15:22-25. Robinson counters that "[t]o the extent [his] underlying
26 claims should not fail, neither should the Wrongful Termination
27 claim[s]." (Opp'n 11:26-27.)
28 //

11

1  "To prevail on a claim of wrongful termination in violation of
2 public policy, a plaintiff employee must establish the existence of a
3 public policy, a nexus between [his] termination and the protected
4 activity related to that public policy, and damages resulting from the
5 termination." Scheller v. Am. Med. Response, Inc., No. 1:08-CV-00798,
6 2010 WL 2991508, at *18 (E.D. Cal. July 28, 2010) (citation omitted).
7 "FEHA's provisions prohibiting discrimination may provide the policy
8 basis for a claim for wrongful discharge in violation of public policy."
9 Diaz v. Fed. Express Corp., 373 F. Supp. 2d 1034, 1065 (C.D. Cal. 2005)
10 (internal quotation marks and citation omitted). "[A] [v]iolation[] of
11 California Labor Code § 1102.5 can [also] support a [claim] for wrongful
12 termination in violation of public policy." Ferretti v. Pfizer Inc., No.
13 11-CV-04486, 2012 WL 694513, at *7 (N.D. Cal. Feb. 29, 2012) (citation
14 omitted).

15  Since Robinson's FEHA disability discrimination "claim fails,
16 his claim for wrongful termination in violation of public policy [based
17 on disability discrimination also] fails" and is dismissed. Hanson v.
18 Lucky Stores, Inc., 74 Cal. App. 4th 215, 229 (1999).

19  HD Supply argues Robinson's wrongful termination in violation
20 of public policy claim based on retaliation should also be dismissed,
21 since "[Robinson] fails to state a claim for retaliation." (Mot. 14:20-
22 21 & 15:17-25.) "To establish a prima facie case for retaliation under
23 [Labor Code] Section 1102.5, an employee must show (1) that he engaged
24 in protected activity, (2) that he was thereafter subjected to an
25 adverse employment action by his employer, and (3) that there was a
26 causal link between the protected activity and the adverse employment
27 action." Love v. Motion Indus., Inc., 309 F. Supp. 2d 1128, 1134 (N.D.
28

Cal. 2004) (citing Morgan v. Regents of Univ. of Cal., 88 Cal. App. 4th 52, 69 (2000)).

HD Supply argues Robinson "has not established that he was engaged in a protected activity" since he "alleges . . . there was an alternative [to Sullivan's order] that would not have violated any [Department of Transportation] regulation[.]" (Mot. 15:2-4 & 15:8-14.) However, Robinson alleges Sullivan "told [him] that he would be disciplined for insubordination if he . . . refus[ed] to execute [her] order[,]" which Robinson alleges would have violated federal law. (Compl. ¶¶ 12 & 15.) A reasonable inference can be drawn from this allegation that Robinson's refusal to carry out Sullivan's order was protected activity under Labor Code section 1102.5; therefore, HD Supply has not demonstrated that Robinson's wrongful termination claim based on the public policy stated in Labor Code section 1102.5 should be dismissed.

**E. Negligent Hiring and Retention Claim**

HD Supply argues "[Robinson] has failed to state a claim for negligent hiring and retention[,]" since "[t]here are no facts alleged that create a reasonable inference that HD [Supply] knew or should have know[n] that unidentified actors were incompetent or unfit." (Mot. 18:5-17.) Robinson counters that he alleges "he complained to [Gagon] . . . about [Sullivan's] insistence on his compliance with an unlawful order" and "following his suspension, [Robinson] took a 10-working-day leave of absence based on [Sullivan's] conduct." (Opp'n 13:23-26.) Robinson argues "despite [HD Supply's] knowledge of these facts, it permitted [Sullivan] to resume her mistreatment of [Robinson] immediately upon his return." Id. 13:27-28.

//

"An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit." Delfino v. Agilent Techs., Inc., 145 Cal. App. 4th 790, 815 (2006) (internal quotation marks and citation omitted). "Negligence liability will be imposed upon the employer if it knew or should have known that hiring [or retaining] the employee created a particular risk or hazard and that particular harm materializes." Id. (internal quotation marks and citation omitted).

Here, Robinson fails to allege facts supporting a reasonable inference that "[HD Supply] knew or should have known that hiring [or retaining Sullivan] created a particular risk or hazard and that particular harm materialize[d]." Id. Therefore, this claim is dismissed.

### V. CONCLUSION

For the stated reasons, the dismissal motion is granted in part and denied in part. Robinson is granted ten (10) days from date on which this order is filed to file a First Amended Complaint in which he addresses the deficiencies in any dismissed claim.

Dated: July 3, 2012

GARLAND E. BURRELL, JR.
United States District Judge

14