IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRIS ROBINSON,<br><br>        Plaintiff,<br><br>    v.<br><br>HD SUPPLY, INC., a corporation,<br><br>        Defendant.<br>_____ | 2:12-cv-00604-GEB-CKD<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |

        Defendant HD Supply, Inc. moves under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for dismissal with prejudice of Counts One through Four and Count Six of Plaintiff's Second Amended Complaint ("SAC"). Plaintiff Kris Robinson alleges in these counts respectively the following claims: wrongful termination, disability discrimination, failure to provide reasonable accommodations, failure to engage in the interactive process, and negligent hiring and retention. Plaintiff opposes the motion.

## I. LEGAL STANDARD

        Decision on a Rule 12(b)(6) dismissal motion requires determination of "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

In evaluating a Rule 12(b)(6) motion, the court "accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Serv., 671 F.3d 1138, 1142-43 (9th Cir. 2012) (citing Twombly, 544 U.S. at 555-56). However, this tenet does not apply to "legal conclusions . . . cast in the form of factual allegations." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Id. (internal quotation marks omitted); see also Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

## II. FACTUAL BACKGROUND

The following allegations in the SAC are involved in the motion. On or about March 24, 2008, Defendant, an industrial distribution corporation, hired Plaintiff to work as an Assistant Transportation Manager. (SAC ¶ 8.) Plaintiff's job duties included "scheduling truck drivers and coordinating pick-ups and deliveries throughout Northern California," and "comply[ing] with state and federal laws and regulations," such as the Federal Motor Vehicle Safety Regulations. (Id. ¶¶ 9-10.) On January 11, 2010, "[Plaintiff] informed Mary Sullivan, [Defendant's] Distribution Center Manager and [Plaintiff's] immediate supervisor, that he had recently been diagnosed

with Post Traumatic Stress Disorder ('PTSD') as a result of events that occurred during his overseas service in the United States Marine Corps." (Id. ¶ 11.) Seven working days later, Ms. Sullivan suspended Plaintiff from his job indefinitely. (Id. ¶¶ 12, 20, 30.)

On January 20, 2010, "Ms. Sullivan instructed [Plaintiff] to locate a driver who would be able to make a delivery from Sacramento to Salinas on short notice. [Plaintiff] was concerned about this instruction, however, because he knew that, based on the distance between these locations, this delivery route would necessitate a violation of the U.S. Department of Transportation Hours-of-Service Regulations." (Id. ¶ 13.) "[Plaintiff] shared his concern with Ms. Sullivan, who refused to rescind her order. Thereafter, [Plaintiff] consulted with [Defendant's] Regional Transportation Manager, Bruce Gagon" and "suggested an alternative method of accomplishing the delivery without violating any Department of Transportation Regulations." (Id. ¶ 14.) "Mr. Gagon advised [Plaintiff] that if he was uncomfortable with the instruction, he should ask Ms. Sullivan to issue the order herself. [Plaintiff] complied with [Mr. Gagon's] direction . . . and refused to issue" the order. (Id. ¶ 15.) Despite Plaintiff's compliance with Mr. Gagon's advice, Ms. Sullivan "harangued" Plaintiff and "told [him] that he would be disciplined for insubordination if he maintained his refusal to execute the order." (Id. ¶ 16.)

Ms. Sullivan's actions caused Plaintiff "extreme stress and anxiety" and "exacerbated [Plaintiff's] preexisting PTSD and [Plaintiff's] reliance on medication for his PTSD." (Id. ¶ 17.) "Ms. Sullivan's insistence that she would discipline [Plaintiff] if he did not execute an order that he knew violated State and Federal laws and regulations [] triggered the symptoms of [Plaintiff's] PTSD and . . .

interfered with [Plaintiff's] ability to coordinate with his coworkers." (Id. ¶ 28.) Her threats and their interaction with Plaintiff's PTSD also "hindered [Plaintiff's] ability to concentrate" and perform the "essential function" of scheduling drivers and deliveries on time and in compliance with the law. (Id. ¶ 27.) Due to the threats, Plaintiff "informed [Defendant] that he needed to take a walk [in the warehouse] in order to calm down" and that "Ms. Sullivan's threats necessitated his temporary removal from the hostile situation." (Id. ¶¶ 18-19, 22.) Plaintiff was suspended indefinitely from his job later that day. (Id. ¶ 12.)

"Because of the stress the suspension caused him, [Plaintiff] visited his physician's office and received a note from [the] Nurse Practitioner, Ms. Willerup, prescribing [that] he take a 10-working-day leave of absence . . . 'in order to adjust to treatment for health concerns.' [Plaintiff] provided this information to [Defendant]." (Id. ¶ 31.) Plaintiff's request for this medical leave immediately followed his disagreement with Ms. Sullivan. (Id. ¶ 24.)

Plaintiff also told "Mr. Gagon that Ms. Sullivan was threatening him with discipline if he failed to execute the [] order." (Id. ¶ 23.) Mr. Gagon "knew that permitting Ms. Sullivan to continue [] supervis[ing] [Plaintiff] created the risk that [Plaintiff] would suffer additional injuries." (Id. at ¶ 21.) Nonetheless, "Ms. Sullivan continued to supervise [Plaintiff]" throughout and following the January 20th incident. (Id. at ¶ 23.)

After his medical leave, Plaintiff "returned to work on February 9, 2010." (Id. ¶ 33.) The next day, on February 10, 2010, Defendant "summarily terminated [Plaintiff's] employment." (Id. ¶ 34.) The only misconduct that Defendant alleged Plaintiff committed involved

the January 20th incident. (Id. ¶ 23.) In terminating Plaintiff, "Defendant considered Plaintiff's disability" and "Plaintiff's . . . refusal to participate in a course of action that would result in a violation of Federal and State laws and regulations." (Id. ¶¶ 42, 43, 52.)

### III. DISCUSSION

#### A. Disability Discrimination

Defendant seeks dismissal of Plaintiff's disability discrimination claim alleged in Count Two under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 et seq.. Defendant argues this claim should be dismissed because Plaintiff "has not alleged facts to support a reasonable inference that he suffers from a disability, that he could not perform the essential duties of the job with or without a reasonable accommodation, and that he was subjected to an adverse employment action because of his disability." (Mot. 14:9-12.) Defendant further contends that Plaintiff concedes in the SAC that he "was suspended because he refused to comply with an order that he believed would violate USDOT regulations, not because of his PTSD or an alleged disability." (Mot. 14:11-14.)

Plaintiff counters that his allegations "show that [] his PTSD hindered his ability to participate in the major life function of working," (Opp'n 8:3-4.); that he "has alleged that Ms. Sullivan's mistreatment [] inhibited his ability to perform essential job duties" such as scheduling drivers and coordinating with coworkers to solve problems, (Opp'n 8:8-10.); and that "'Defendant considered Plaintiff's disability as a motivating factor in its termination of Plaintiff's employment'" and that Plaintiff's alternative pleading of retaliatory

termination does not affect his disability discrimination pleading. (Opp'n 8:24-27 (citing Compl. ¶ 52).)

> In a FEHA disability discrimination suit:
>
> the plaintiff initially has the burden to establish a prima facie case of discrimination. The plaintiff can meet this burden by presenting evidence that demonstrates, even circumstantially or by inference, that he or she (1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability. To establish a prima facie case, a plaintiff must show actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a [prohibited] discriminatory criterion.

Sandell v. Taylor-Listug, Inc., 188 Cal. App. 4th 297, 310 (2010) (internal citations and quotation marks omitted).

The first part of this three-part prima facie case requires Plaintiff to show that he suffered from a disability. Under FEHA, "mental disability" is "broad[ly] . . . construed" and "liberally" defined in order to protect employees from discrimination. Cal. Gov't Code §§ 12926.1(b), 12993(a); see also Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 818-19 (2001). FEHA prescribes that "'[m]ental disability' includes, but is not limited to . . . [h]aving any mental or psychological disorder or condition . . . that limits a major life activity," and that "'[m]ajor life activities' shall be broadly construed and shall include physical, mental, and social activities and working." Cal. Gov't Code § 12926(j). Post-traumatic stress disorder can qualify as a mental disability under FEHA . See Perez v. Proctor & Gamble Mfg. Co., 161 F. Supp. 2d 1110, 1120 (E.D. Cal. 2001) (finding "post traumatic stress disorder [] constitutes a mental disorder" under FEHA); Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 259 (2000)

6

(indicating post-traumatic stress disorder constitutes a mental disability under FEHA and under the more restrictive ADA test for disability).

Here, Plaintiff alleges that he suffered from PTSD, and that his PTSD "interfered with [his] ability to coordinate with his coworkers" and "hindered his ability to concentrate," both of which were "essential function[s]" of his job. (Compl. ¶¶ 11, 27-28.) From these allegations it can be inferred both that Plaintiff suffers from a condition that qualifies as a mental disability under FEHA and that his condition limited his ability to perform the major life activity of working, which is referenced in FEHA. Therefore, Plaintiff has sustained his "light" and "minimal" burden for the first element of his prima facie case. Sandell, 188 Cal. App. 4th at 310.

The second part of the prima facie case requires Plaintiff to show that he "could perform the essential duties of the job with or without reasonable accommodations." Sandell, 188 Cal. App. 4th at 310; see also Green v. State, 42 Cal. 4th 254, 258 (2007) (noting that "FEHA requires employees to prove that they are qualified individuals under the statute just as the federal ADA requires"). This minimal showing may be met with circumstantial evidence and a plaintiff's self-assessment of his performance. See Lyons v. England, 307 F.3d 1092, 1115 (9th Cir. 2002) (finding prima facie burden met where plaintiffs provided positive self performance assessments and circumstantial evidence of qualification based on their prior positions with defendant-employer); Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 659-60 (9th Cir. 2002) (noting prima facie case satisfied based on circumstantial evidence and plaintiff's asserted self-assessment that "his performance was equal to his coworkers"). Plaintiff provides circumstantial and

self-assessment evidence of his qualification. Plaintiff alleges that he served as an Assistant Transportation Manager scheduling truck drivers and coordinating pick ups for over twenty months before the January 20th incident, and that he "was able to perform the essential functions of his job," but he became temporarily unable to perform these functions due to the interaction of Sullivan's threats with his PTSD. (Compl. ¶¶ 8-9, 26-28.) Plaintiff also alleges that he "would have been able to continue performing the essential functions of his job if he were permitted to conduct his work without being threatened with discipline [by Sullivan]." (Id. ¶ 29.) These allegations are sufficient to sustain Plaintiff's "no[n-]onerous" burden under the second element of his prima facie case. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

The third part of Plaintiff's prima facie case requires Plaintiff to show that he was subjected to an adverse employment action because of his disability. To make this showing, "an employee need only offer sufficient circumstantial evidence to give rise to a reasonable *inference* of discrimination." Sandell, 188 Cal. App. 4th at 310. The timing of an adverse employment action, coupled with an employee's disability or communications regarding the disability, may permit an inference of discrimination sufficient to establish a prima facie case. Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1089-90 (9th Cir. 2001); see also Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 224 (1999) (noting that pretext "may be inferred from the timing of the discharge decision" in FEHA disability discrimination suits). Here, Plaintiff was suspended from work indefinitely by the supervisor to whom, just seven working days earlier, he revealed his PTSD condition, and he was terminated the day after he returned from medical leave "to

adjust to treatment for health concerns." (Compl. ¶ 31, 34.) Although Defendant argues that Plaintiff "was suspended because he refused to comply with an order that he believed would violate USDOT regulations, not because of his PTSD or an alleged disability," Plaintiff may allege both theories in the alternative without sacrificing either. See <u>Rader Co. v. Stone</u>, 178 Cal. App. 3d 10, 29 (1986) (noting that at pleading stage plaintiff may plead inconsistent and alternative counts). Here, Defendant has not shown that "it is more likely than not that [its] actions were [not] based on a [prohibited] discriminatory criterion." <u>Sandell</u>, 188 Cal. App. 4th at 310 (citations and internal quotation marks omitted). Therefore, Plaintiff has satisfied his burden under the third element of his prima facie case, and Defendant's request for dismissal of Count Two for failure to state a claim is DENIED.

### B. Failure to Accommodate & Failure to Engage in the Interactive Process

Defendant seeks dismissal of Counts Three and Four, in which Plaintiff alleges respectively claims for failure to provide reasonable accommodations and failure to engage in the interactive process in violation of Cal. Gov't Code §§ 12940(m), 12940(n). Defendant argues that it lacked a duty to accommodate and a duty engage in the interactive process under FEHA, since although "HD SUPPLY may have known of Robinson's PTSD, [] neither Robinson nor the nurse practitioner informed HD SUPPLY that Robinson suffered from a disability that affected his ability to perform his duties at work." (Mot. 3-6.) Defendant also argues that the nurse practitioner did not "conclude[] that Robinson suffered from a condition that prevented him from performing his regular job duties." (Mot. 16:9-10.) Plaintiff rejoins that Defendant "knew of Plaintiff's PTSD" and "admits as much" in its motion, and that "Defendant knew or reasonably should have known that

Plaintiff's 10-day absence from work ['to adjust to treatment for health concerns'] was related to the events on January 20 and his PTSD." (Opp'n 9:3, 9:7-8.) Specifically, Plaintiff argues that "[t]he timing of these events, including Plaintiff's revelation of his PTSD diagnosis as well as his specific complaints to Mr. Gagon about Ms. Sullivan, triggered the employer's duty to engage in the interactive process and provide accommodation." (Opp'n 9:10-13.)

"The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's [known] disability." Cuiellette v. City of Los Angeles, 194 Cal. App. 4th 757, 766 (2011) (citation and internal quotation marks omitted). Here, Plaintiff alleges he is a qualified employee with a disability. This allegation satisfies the first and second elements of a failure to accommodate claim. See supra III.A. Under the third element of a reasonable accommodation claim, an employee need not request reasonable accommodations; rather, the duty to accommodate arises once the employer knows of a qualified employee's disability. Prilliman v. United Air Lines, Inc., 53 Cal. App. 4th 935, 950-51 (1997); see also Raine v. City of Burbank, 135 Cal. App. 4th 1215, 1222 (2006) (explaining that once an employee gives the employer notice of his disability, "[t]his notice then triggers the employer's burden to take positive steps to accommodate the employee's limitations") (citation and internal quotation marks omitted); Cal. Gov't Code § 12940(m) (stating it is an unlawful employment practice "[f]or an employer . . . to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee,"

but not stating that it is unlawful for an employer to fail to accommodate an employee's disability in response to an employee's accommodation request) (emphasis added); Cal. Code Regs. tit. 2, § 7293.9 (requiring that an employer "shall make reasonable accommodation to the disability of any individual with a disability if the employer or other covered entity knows of the disability") (emphasis added). Under FEHA, an employer "knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation." Faust v. Cal. Portland Cement Co., 150 Cal. App. 4th 864, 887 (2007) (internal quotation marks omitted). Further, "[a] supervisor is the employer's agent" for purposes of the reasonable accommodations requirement under FEHA. Cal. Fair Emp't & Hous. Comm'n v. Gemini Aluminum Corp., 122 Cal. App. 4th 1004, 1015 (2004). Thus, if a supervisor has acquired knowledge relevant to a FEHA discrimination claim, "a conclusive presumption arises" that the supervisor has conveyed that information to the employer. Id.

        Here, Plaintiff "informed Mary Sullivan . . . that he had recently been diagnosed with Post Traumatic Stress Disorder," "made it clear that Ms. Sullivan's threats necessitated his temporary removal from the hostile situation," and then took a medical leave for ten days "[b]ecause of the stress of the suspension" and "provided this information to [Defendant]." (Compl. ¶¶ 11, 22, 31.) Thus Plaintiff has alleged that Defendant knew of his disability via Sullivan, and yet failed to reasonably accommodate Plaintiff's disability. Therefore, Plaintiff has stated a claim for failure to accommodate under § 12940(m), and the motion to dismiss Count Three is DENIED.

In contrast to the FEHA accommodation requirement, FEHA's interactive process requirement provides that it is unlawful "[f]or an employer . . . to fail to engage in a timely, good faith, interactive process . . . <u>in response to a request for reasonable accommodation</u> by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n) (emphasis added). Thus an employee must request reasonable accommodations to trigger the interactive process, unless the employer "(1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, and (3) knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation." <u>Brown v. Lucky Stores, Inc.</u>, 246 F.3d 1182, 1188 (9th Cir. 2001) (citation and internal quotation marks omitted). In this case, Plaintiff does not allege that he requested reasonable accommodations or that he "was unable to request a reasonable accommodation." <u>Id.</u> Therefore, Plaintiff has not stated a claim for failure to engage in the interactive process under § 12940(n), and Count Four is DISMISSED.

**C. Wrongful Termination**

Defendant seeks dismissal of Count One in which Plaintiff alleges wrongful termination in violation of FEHA's public policy against disability discrimination. Defendant argues that although Plaintiff's "wrongful termination claim is based upon two alleged activities"—disability discrimination and retaliation—the Court "should dismiss with prejudice" Plaintiff's wrongful termination claim if it "dismisses Robinson's disability discrimination claim with prejudice." (Mot. 16-22.) Plaintiff counters that "his Retaliation claim has already been deemed to pass the pleading stage," and that "[b]ecause Plaintiff's

12

Wrongful Termination claim flows from both the Retaliation and Disability claim, sustaining one should be sufficient to sustain the Wrongful Termination claim as well." (Opp'n 10:1-5 (citations omitted).) Further, Plaintiff argues that "[t]o the extent [that his disability claim] does should [sic] not fail, neither should the Wrongful Termination claim." (Opp'n 9:28.)

Tort claims for wrongful termination in violation of public policy permit discharged at-will employees to bring suit when they are terminated "for a reason contrary to the law or fundamental public policy." Olinick v. BMG Entm't, 138 Cal. App. 4th 1286, 1300 n.10 (2006) (citation omitted). California Government Code § 12940(a) provides that it is unlawful for an "for an employer, because of the . . . mental disability . . . of any person . . . to discharge the person from employment." Such FEHA "provisions prohibiting discrimination may provide the policy basis for a claim for wrongful discharge in violation of public policy." Phillips v. St. Mary Reg'l Med. Ctr., 96 Cal. App. 4th 218, 227 (2002); see also Estes v. Monroe, 120 Cal. App. 4th 1347, 1355 (2004) (indicating plaintiff may bring claim for wrongful discharge in violation of "the public policy embodied in the FEHA" where defendant failed to offer reasonable accommodations for his disability). Here, Defendant's only argument—that Plaintiff's wrongful termination claim should be dismissed if his disability discrimination claim is dismissed—is insufficient to support dismissal of Plaintiff's claim that he was wrongfully terminated in violation of FEHA. Therefore, this portion of Defendant's dismissal motion is DENIED.

**D. Negligent Hiring & Retention**

Defendant requests dismissal of Count Six in which Plaintiff alleges negligent hiring and retention, since Plaintiff's claim for

negligent hiring and retention was previously dismissed as "insufficient" and Plaintiff "does not incorporate any new allegations that are different from the import of what he had alleged before." (Mot. 17:24-25.) Further, Defendant argues that Plaintiff "does not allege [t]hat HD SUPPLY knew or should have known . . . that retention of Sullivan created a particular risk or hazard to Robinson." (Reply 6:5-9.) Plaintiff responds that "[i]n fact, this Court previously ruled that Plaintiff's conclusions were *conclusory*, not that they were insufficient. Plaintiff contends that the newly added ¶¶ 22, 23, 27, 28, and 31, combined with the previous allegations, are no longer conclusory. These new allegations clarify that Defendant knew or should have known that retaining Sullivan created a particular risk or hazard to Plaintiff." (Opp'n 10:13-17.)[1]

An employer "is not liable [for negligent hiring or retention] . . . merely because [an employee] is incompetent, vicious, or careless." Phillips v. TLC Plumbing, Inc., 172 Cal. App. 4th 1133, 1140 (2009) (citation omitted). Rather, "an employer's duty . . . is breached only when the employer knows, or should know, facts which would warn a reasonable person that the employee presents an undue risk of harm . . . in light of the particular work to be performed." Federico v. Super. Ct., 59 Cal. App. 4th 1207, 1214 (1997). Thus "an employer's

---

[1] Defendant also seeks dismissal of Counts One through Four and Count Six, arguing that the Court dismissed each of these claims in the First Amended Complaint ("FAC") and that Plaintiff's SAC does "not incorporate[] any new set of allegations that cure the defects in [the] First Amended Complaint." (Mot. 7:6-8:14, 13:28-14:1; Reply 1:21-2:21.) Plaintiff responds that "pleadings must stand independent of their predecessors," and "the Second Amended Complaint, when viewed as an independent pleading, contains sufficient causes of action to move forward." (Opp'n 6:21, 7:1-3.) Since Plaintiff's allegations may be assessed on their merits, a separate analysis of the differences between Plaintiff's SAC and his FAC is not conducted.

14

1 liability must be determined in the context of the specific duties the
2 work entails," and liability arises only when the employer "antecedently
3 had reason to believe that an undue risk of harm would exist because of
4 the employment." Id. at 1215; Phillips, 172 Cal. App. 4th at 1140.

5       Here, there is no showing that Defendant had reason to believe
6 Sullivan's position as a Distribution Center Manager exposed employees
7 or customers to "an undue risk of harm." Phillips, 172 Cal. App. 4th at
8 1140. Nor is there anything in the record indicating that Defendant
9 should have suspected that Sullivan, in particular, "present[ed] an
10 undue risk of harm." Federico, 59 Cal. App. 4th at 1214. Plaintiff
11 alleges merely that "Mr. Gagon was aware of Ms. Sullivan's mistreatment
12 of [Plaintiff] and did nothing to prevent it"; "Mr. Gagon knew that
13 permitting Ms. Sullivan to continue to supervise [Plaintiff] created the
14 risk that [Plaintiff] would suffer additional injuries"; and "Plaintiff
15 complained to Mr. Gagon that Ms. Sullivan was threatening him with
16 discipline if he failed to execute the unlawful order." (Compl. ¶¶ 21,
17 23.) However, these conclusions, cast in the form of allegations, are
18 conclusory "recitation[s] of the elements of a cause of action," and as
19 such, they "will not do." Twombly, 550 U.S. at 555. Therefore, Plaintiff
20 has failed to state a claim for common law negligent hiring and
21 retention, and Count Six is DISMISSED.

### E. Failure to Prevent Discrimination

23       Lastly the Court sua sponte reconsiders the portion of its
24 September 10, 2012, Order in it which dismissed with prejudice Count Six
25 in Plaintiff's First Amended Complaint, since Plaintiff "did not
26 [administratively] exhaust his . . . claim." (ECF No. 29, 7:23-28.)
27 "Unlike a judgment on the merits, a plaintiff's failure to exhaust
28 administrative remedies should result in a dismissal without prejudice."

Payne v. Peninsula Sch. Dist., 653 F.3d 863, 881 (9th Cir. 2011); see also City of Oakland, Cal. v. Hotels.com LP, 572 F.3d 958, 962 (9th Cir. 2009). Therefore, that dismissal with prejudice is VACATED and converted to DISMISSAL without prejudice.

### IV. CONCLUSION

For the stated reasons, Counts Four and Six of the SAC are dismissed, and the remainder of the motion is denied. However, Plaintiff is granted ten (10) days leave from the date on which this Order is filed to file an amended complaint concerning the dismissed claims. Further, the portion of the September 10, 2012, Order dismissing with prejudice Count Six of Plaintiff's First Amended Complaint is converted to dismissal without prejudice.

Dated: November 1, 2012

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge